UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DEMETRIUS HILL,

                          Plaintiff,

                                             MEMORANDUM & ORDER
          -against-                          06-CV-0126(JS)(ARL)

PAUL LAIRD, WARRDEN OF MDC; MR. CLEMENS,
ASSOCIATE WARDEN; CAPTAIN SCHOENFELDER;
LT. MALDONADO; CASE MANAGER MCFARLAND;
DANNY GARCIA, D.H.O.; WHEELESS, C.O.;
HENDERSON, C.O.,

                          Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:           Demetrius Hill, pro se
                         #68133-053
                         United States Penitentiary, Lewisburg
                         Inmate Mail/Parcels
                         P.O. Box 1000
                         Lewisburg, PA 17837


For Defendants

Laird, Clemens,
Schoenfelder,
McFarland, Garcia,
Wheeless, and
Henderson:               James R. Cho, Esq.
                         United States Attorney's Office
                         Eastern District Of New York
                         271 Cadman Plaza East
                         Brooklyn, NY 11201

                         Vincent Lipari, Esq.
                         United States Attorney's Office
                         Eastern District of New York
                         610 Federal Plaza, 5th Floor
                         Central Islip, NY 11722


Maldonado:               No appearances.

SEYBERT, District Judge:

On January 6, 2006, incarcerated plaintiff Demetrius Hill ("Plaintiff"), proceeding pro se, commenced this action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), against eight former and current prison officials, alleging, inter alia, First Amendment claims of retaliation for filing prison grievances. Presently before the Court is a motion for summary judgment filed by seven of the eight defendants--Paul Laird ("Laird"), Judd Clemens ("Clemens"), Rick Schoenfelder ("Schoenfelder"), Patrick McFarland ("McFarland"), Daniel Garcia ("Garcia"), Terrell Wheeless ("Wheeless"), and Gregory Henderson ("Henderson") (collectively, "Defendants").   For the following reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>[1]

From December 10, 2005 to July 21, 2005, Plaintiff was an inmate at the Metropolitan Detention Center (the "MDC"), a

_____

[1] Before providing a factual background, the Court must address the deficiency of Plaintiff's Local Civil Rule 56.1 Counterstatement.   (Docket Entry 99.)   The following facts are drawn from (1) the Complaint; (2) Defendants' Local Civil Rule 56.1 Statement ("Defs.' 56.1 Stmt.", Docket Entry 109-2) and their evidence in support; and (3) Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment ("Pl.'s Br.", Docket Entry 123) and his evidence in support.   Plaintiff filed a Local Civil Rule 56.1 Counterstatement but failed to comply with Local Civil Rule 56.1(d) as each numbered paragraph

prison in Brooklyn, New York, managed by the United States Bureau
of Prisons (the "BOP"). (Defs.' 56.1 Stmt., Docket Entry 109-2,
¶ 5.) Defendants are seven current and former prison officials
who worked at the MDC during Plaintiff's incarceration there.
(Defs.' 56.1 Stmt. ¶¶ 42-56.)[2] During this period of time,
Plaintiff was assigned to the Special Housing Unit (the "SHU") at
the MDC. (Defs.' 56.1 Stmt. ¶ 5.)

Plaintiff alleges a series of incidents that occurred at
the MDC from April 2005 to July 2005 in which executive staff and
correctional officers allegedly assaulted and harassed Plaintiff

---

of the Counterstatement is not followed "by citation to evidence
which would be admissible . . . as required by Fed. R. Civ. P.
56(c)." LOCAL CIV. R. 56.1(d). Therefore, the Court will not
consider Plaintiff's Counterstatement in deciding Defendants'
motion. However, Plaintiff's memorandum of law takes the form
of an unsworn declaration under penalty of perjury pursuant to
28 U.S.C. § 1746. Because Plaintiff is proceeding pro se, the
Court has cross-referenced the facts alleged in Plaintiff's
memorandum of law with Defendants' 56.1 Statement in order to
ascertain any facts in dispute.

[2] Plaintiff also names in his Complaint Frank Maldonado
("Maldonado"), a former lieutenant at the MDC. On February 5,
2009, the U.S. Attorney's Office moved for leave to withdraw as
counsel for Maldonado because the Office filed criminal charges
against Maldonado and other MDC employees for allegedly
violating a former inmate's civil rights. (Docket Entry 41.)
On March 13, 2009, this Court granted the motion to withdraw and
stayed this action for thirty days to allow Maldonado to retain
new counsel. (Docket Entry 42.) However, no one has appeared
on behalf of Maldonado, nor has he attempted to defend this
action pro se. Maldonado was found not guilty after a jury
trial in February 2008. See Verdict Sheet, United States v.
LoPresti, No. 07-CR-0273 (E.D.N.Y. Feb. 1, 2008), Docket Entry
347.

in retaliation for Plaintiff repeatedly filing administrative grievances regarding alleged staff misconduct and unconstitutional conditions of confinement. (See generally Compl.) Briefly stated, the Court reads Plaintiff's First Amendment retaliation claims to be based on the following allegations:

1.   "From the inception of his arrival at the MDC," Clemens, former Associate Warden at the MDC, told Plaintiff "to stop filing complaints or he would make his life a living hell." Clemens further threatened to keep Plaintiff in the SHU by filing false disciplinary reports. (Compl. at 2.)

2.   Acting at Clemens' direction, several staff members, who are not named as defendants here, confiscated Plaintiff's personal belongings, including a window covering and Plaintiff's administrative grievance forms and legal materials. (Compl. at 2-3.)

3.   "In or about the second Thursday of June [2005]," Clemens kicked a "food slot" closed on Plaintiff's hand. (Compl. at 3.) Clemens and Schoenfelder, a former captain at the MDC, then placed Plaintiff on a restricted "bag lunch" diet consisting of bread and bologna for five days. (Compl. at 3.) When Plaintiff asked Clemens why he "was being deprived of food," Clemens told him that he "got too much energy [and] maybe less food a [sic] stop these [administrative grievances Plaintiff] file[s]." (Compl. at 4.)

4

4.    McFarland, a case manager at the MDC, refused to process Plaintiff's administrative grievance forms on two occasions because Clemens and Laird, former Warden at the MDC, instructed McFarland not to accept grievances from Plaintiff. (Compl. at 4.)

5.    After Plaintiff filed a grievance regarding the alleged assault by Clemens, Schoenfelder told Plaintiff that he "better stop filing complaints because things would get a lot worse, [Plaintiff would] find [himself] far, far, far away, that himself, the warden and Clemens were making arrangements to have [Plaintiff] shipped to a place that makes Guantanamo Bay look like luxury." (Compl. at 4.)

6.    Wheeless, a senior officer at the MDC, searched Plaintiff's cell "everyday [sic] for a week straight confiscating legal letters, forms, which dealt with civil litigations against an institution, hygiene and [Plaintiff's] pictures and threw them away each time." (Compl. at 4.) Plaintiff alleges that "[i]t's believed that [Schoenfelder]" told Wheeless to conduct these searches. (Compl. at 4.)

7.    Henderson, a senior officer at the MDC, spit in Plaintiff's food, refused to give Plaintiff food on one occasion, "denied plaintiff recreation when he had the opportunity," destroyed several pieces of Plaintiff's mail, and threatened to poison Plaintiff and "pay him back for each and every complaint [plaintiff] made." (Compl. at 4-5 (alteration in the original).)

8. During a SHU meeting, Clemens and Schoenfelder instructed Defendant Daniel Garcia ("Garcia"), a disciplinary hearing officer at the MDC, to take away Plaintiff's visiting privileges in retaliation for Plaintiff's numerous grievances. (Compl. at 5.)

9. On December 10, 2005, Laird transferred Plaintiff from the MDC to the United States Penitentiary in Lewisburg, Pennsylvania in retaliation for Plaintiff's complaints against other MDC officials. (Compl. at 6.)

According to Defendants, during this three-month period, Plaintiff filed thirty-nine administrative grievances, fourteen of which relate to staff misconduct, some of which relate to the incidents alleged in the Complaint and some of which do not. (Defs.' 56.1 Stmt. ¶¶ 18-33.) The remaining twenty-five administrative grievances relate to Plaintiff's conditions of confinement and are not the subject of this lawsuit. (Defs.' 56.1 Stmt. ¶ 34.)

Defendants moved for summary judgment on June 14, 2013 arguing that Plaintiff's Complaint should be dismissed because: (1) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, and (2) Plaintiff failed to establish his First Amendment retaliation claims. (Docket Entry 109.) Plaintiff has submitted a sworn statement in opposition alleging, inter alia, that he would have

exhausted his administrative remedies had prison staff not prevented him from doing so and that he has established claims of retaliation. (Docket Entry 123.)

<u>DISCUSSION</u>

Before turning to the merits of Defendants' motion, the Court must make one preliminary point. Defendants have moved for summary judgment seeking to dismiss the entire Complaint on the ground that Plaintiff has failed to establish his First Amendment retaliation claims. However, given Plaintiff's <u>pro</u> <u>se</u> status, the Complaint, liberally construed, appears also to attempt to hold Laird liable on a theory of supervisor liability. Specifically, Plaintiff alleges, <u>inter</u> <u>alia</u>, that "[Laird, t]he Warden, also is named, because the plaintiff has complained to him continuously and on numerous occasions, all to no avail" and that "[i]t is a fact Warden Laird 'turned a blind eye' to the abuses of his staff and directly condoned their actions." (Compl. at 6.) In addition, Plaintiff appears to allege a claim against Garcia, a disciplinary officer at the MDC, that Garcia violated Plaintiff's due process rights by attending the "S.H.U. meeting for the purpose of learning how the administration wants particular prisoners handled." (Compl. at 5.) These claims may or may not have merit. However, given that Defendants have only moved for summary judgment on Plaintiff's First Amendment retaliation claims, the Court therefore consider Defendants' motion as one for partial summary

judgment and will not consider the merits of these additional claims at this time.  The Court would invite an additional summary judgment motion on the potential additional claims against Laird and Garcia.

As to the Defendants' current motion, the Court will first address the applicable standard of review on a motion for summary judgment before turning to the merits.

## I.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment."  Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  A genuine factual issue

exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

II. Exhaustion of Administrative Remedies Under the Prison Litigation Reform Act

Defendants first argue that summary judgment should be granted because Plaintiff failed to exhaust his available administrative remedies. (Defs.' Br., Docket Entry 109-3, at 4-11.) Under the Prison Litigation Reform Act (the "PLRA"), an inmate must exhaust all available administrative remedies prior to commencing an action challenging the conditions of his incarceration. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted."). The PLRA exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 524-25.

The PLRA requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175-76 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in the original) (quoting Woodford v. Ngo, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). Thus, "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'--rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (internal citations omitted) (quoting Woodford, 548 U.S. at 88).

10

In this case, Plaintiff complains of conduct by officials employed by the BOP at a federal correctional institution.  He therefore must comply with the BOP's four-step "Administrative Remedy Program," which allows an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).  First, an inmate must report the grievance to a staff member, and the staff member should attempt to resolve the issue informally.  Id. § 542.13.  The second step, which may occur only after the filing of the informal grievance, requires the filing of a formal, written "Administrative Remedy Request" on a BP-9 form.  Id. §§ 542.13(a), 542.14(a).  The inmate must submit the BP-9 within "20 calendar days following the date on which the basis for the Request occurred." Id. § 542.14(a).  The warden of the facility may grant an extension of time to file the BP-9 "[w]here the inmate demonstrates a valid reason for delay." Id. § 542.14(b).  The warden must respond to the BP-9 within twenty days, and if no response is received "within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial . . . ." Id. § 542.18.  Third, if the inmate "is not satisfied with the Warden's response" to the BP-9, he or she may file an appeal to the Regional Director of the BOP on a BP-10 form within twenty days of the warden's decision on the BP-9. Id. § 542.15(a).  Fourth, if the inmate "is not satisfied with the

Regional Director's response" to the BP-10, he or she may appeal to the General Counsel of the BOP by submitting a BP-11 within thirty days of the disposition of the BP-10.  Id.

Defendants claim that "the undisputed evidence shows that Plaintiff failed to exhaust his administrative remedies under the BOP's inmate grievance procedure before filing this lawsuit." (Defs.' Br. at 6.)  In support of this argument, Defendants submit the Declaration of Kenneth Bork, a staff attorney at the MDC employed by the BOP.  (Bork Decl., Docket Entry 110.)  Bork attests that between April and July 2005--the time period at issue in this action--Plaintiff filed thirty-nine administrative remedy requests, fourteen of which allege staff misconduct.  (Bork Decl. ¶¶ 18-19.)  Bork further testifies that Plaintiff withdrew three of the requests, that the remaining eleven grievances were denied, and that Plaintiff failed to appeal any of the denials. (Bork Decl. ¶¶ 20-33.)  Defendants argue that Plaintiff's failure to appeal the denials precludes this entire action.  (Defs. Br. at 6.)

While Defendants are correct that the failure to appeal an administrative remedy request precludes a prisoner from bringing a federal suit, their argument is not specifically tailored to the facts of this case.  Here, of Plaintiff's fourteen grievances, only five relate to incidents alleged in this action. Six of the requests relate to incidents involving MDC staff not

12

named as defendants, and Defendants have not provided the grievance forms for the remaining three requests, making it impossible to determine the subject matter of those grievances.  Logically, Plaintiff's failure to appeal the grievances not related to the incidents alleged in the Complaint would not preclude Plaintiff from pursuing the claims alleged in the Complaint.  However, Plaintiff's failure to file a grievance in the first instance relating to allegations in the Complaint would.

        That point aside, Plaintiff first argues that he exhausted his administrative remedies for the fourteen grievances because "[n]othing in the BOP policy makes the appeal of administrative remedies mandatory for exhaustion to be complete." (Pl.'s Br., Docket Entry 123, at 3.)  Plaintiff is incorrect.  As noted above, the PLRA requires "'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Jordan v. Fed. Bureau of Prisons, No. 09-CV-8561, 2013 WL 1143617, at *5 (S.D.N.Y. Mar. 19, 2013)[3] (quoting Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009)).  If Plaintiff was not satisfied with a particular response to a grievance, he had to exhaust his administrative remedies by appealing at each level of the administrative process set forth by the BOP.  See id. at *6 ("If

---

[3] Copies of unreported cases will be mailed to the pro se Plaintiff.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

Plaintiff was dissatisfied with the responses he received to his informal complaints, he had to exhaust the subsequent levels of the administrative process [set forth by the BOP] before turning to the courts."). Thus, to the extent that Plaintiff failed appeal a particular grievance, he has not exhausted his administrative remedies.

However, exhaustion under the PLRA is not jurisdictional; it is an affirmative defense. Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004). So, "while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply." Id. at 677 (quoting Porter, 534 U.S. at 524). In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit held that a "three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." First, the court should determine "whether administrative remedies were in fact 'available' to the prisoner." Id. (quoting Abney v. McGinnis, 380 F.3d 663, 667-69 (2d Cir. 2004)). Second, the court should ask "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it" or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citing Johnson

14

v. Testman, 380 F.3d 691, 695-96 (2d Cir. 2004)).  Third, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'"  Id. (quoting Giano, 380 F.3d at 689-91).  "When a genuine issue of material fact exists as to whether plaintiff 'should be excused from exhausting his administrative remedies,' judgment as a matter of law is inappropriate."  Ford v. Spears, No. 10-CV-1314, 2012 WL 4481739, at *7 (E.D.N.Y. Sept. 27, 2012) (quoting Enigwe v. Zenk, No. 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept. 15, 2006)).

Here, the Court finds that there are issues of fact with respect to whether administrative remedies were actually available to Plaintiff.  In opposing Defendants' motion, Plaintiff has submitted a declaration under penalty of perjury stating that he filed administrative grievances for each of the claims in the Complaint but that McFarland "would not process the forms, and they would disappear." (Pl.'s Br. at 8.)  He also states that MDC staff repeatedly searched his cell and destroyed his administrative remedy forms.  (Pl.'s Br. at 8.)  With respect to his failures to appeal, Plaintiff alleges that prison staff failed to provide Plaintiff with appeal forms and that Plaintiff was forced to borrow forms from other prisoners.  (Pl.'s Br. at 7.) Plaintiff also has submitted the affidavit of a Martin Aguilar ("Aguilar"), a fellow inmate at the MDC, in which Aguilar states

under penalty of perjury that McFarland refused to provide
Plaintiff with administrative remedy forms in order to prevent
Plaintiff from filing grievances. (Aguilar Aff., Docket Entry
123-1, at 17[4], ¶ 10.) Accordingly, there are issues of material
fact here that preclude summary judgment on the issue of whether
Plaintiff's failure to exhaust his administrative remedies may be
excused. As such, Defendants' motion for summary judgment due to
Plaintiff's failure to exhaust his administrative remedies is
DENIED.

III. Plaintiff's Retaliation Claims

    A.    Applicable Law

        To succeed on a First Amendment retaliation claim, "a
prisoner must adduce evidence of (1) protected speech or conduct,
(2) adverse action by defendant, and (3) a causal connection
between the protected speech and the adverse action." Bilal v.
White, 494 F. App'x 143, 146 (2d Cir. 2012) (citing Espinal v.
Goord, 558 F.3d 119, 128 (2d Cir. 2009)). The Second Circuit has
warned courts to treat retaliation claims by prisoners "with
skepticism and particular care" due to "both the near inevitability
of decisions and actions by prison officials to which prisoners
will take exception and the ease with which claims of retaliation
may be fabricated." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.

---

[4] This number refers to the page number provided by the
Electronic Case Filing system.

16

1995); accord Mimms v. Carr, No. 09-CV-5740, 2011 WL 2360059, at
*5 (E.D.N.Y. June 9, 2011), aff'd, --- F. App'x ----, 2013 WL
6670713 (2d Cir. Dec. 19, 2013).  "However, that does not mean
that such claims are automatically to be dismissed." Mimms, 2011
WL 2360059, at *5 (quoting Jones v. Harris, 665 F. Supp. 2d 384,
397 (S.D.N.Y. 2009)).

        Here, the first element--that the conduct in question be
protected--is met.  A prisoner's use of the prison grievance system
is protected activity under the First Amendment.  See, e.g., Gill
v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004); Davis v. Goord,
320 F.3d 346, 352-53 (2d Cir. 2003).  Thus, the relevant inquiry
is whether there are any issues of fact with respect to the second
and third elements.

        In the prison context, an action is "adverse" if it would
"deter a similarly situated individual of ordinary firmness from
exercising his constitutional rights." Gill v. Calescibetta, 157
F. App'x 395, 397 (2d Cir. 2005).  This is an objective question:
"[A] prisoner need not demonstrate an actual or subjective chill-
-that is, any dissuasion from further exercising his own rights."
Id. (emphasis in the original) (citing Pidlypchak, 389 F.3d at
384).  Under this standard, however, "de minimus" acts, even if
retaliatory, are "outside the ambit of constitutional protection."
Pidlypchak, 389 F.3d at 381.

17

To satisfy the third element--*i.e.*, a causal connection between the protected activity and the adverse action--a prisoner must show that the protected speech "played a substantial part in the adverse action." Davis, 320 F.3d at 354. In evaluating this element, "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." Sharif v. Poole, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010) (citing Colon, 58 F.3d at 872–73).

However, even if the prisoner satisfies the initial burden that "an improper motive played a substantial part" in the adverse action, a defendant "may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred." Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). With these standards in mind, the Court will address Plaintiff's retaliation claims against each Defendant.

A.   <u>Laird</u>

Plaintiff alleges that Laird transferred Plaintiff from the MDC to the United States Penitentiary in Lewisburg, Pennsylvania in retaliation for Plaintiff's grievances against other MDC officials.  (Compl. at 6; Pl.'s Br. at 14-15.)  Laird argues, among other reasons, that he is entitled to summary judgment on this claim because Defendants have shown that, even without an improper motivation, Laird still would have ordered a transfer.  The Court agrees.

"A prisoner has no liberty interest in remaining at a particular correctional facility." <u>Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998) (internal citations omitted).  Thus, "[p]rison officials have broad discretion to transfer prisoners." <u>Meriwether v. Coughlin</u>, 879 F.2d 1037, 1045-46 (2d Cir. 1989). Prison officials "may not, however, transfer [a prisoner] <u>solely</u> in retaliation for the exercise of constitutional rights." <u>Id.</u> (internal citations omitted) (emphasis added); <u>accord</u> <u>Davis</u>, 160 F.3d at 920 (Prison officials "may not transfer an inmate in retaliation for the exercise of constitutionally protected rights . . . .").

As noted above, Plaintiff has the initial burden of demonstrating that his use of the prison grievance system played a substantial part in Laird's decision to transfer Plaintiff to a different prison.  If Plaintiff meets this burden, Laird has "the

opportunity to demonstrate by a preponderance of the evidence that [he] would have reached the same decision even in the absence of the protected conduct." Salahuddin v. Perez, No. 99-CV-10431, 2006 WL 266574, at *5 (S.D.N.Y. Feb. 2, 2006).

Here, it is unnecessary to determine whether Plaintiff has met his initial burden because there are no genuine issues of material fact as to whether Laird has met his burden of demonstrating that he would have ordered a transfer even in the absence of a retaliatory motive.  Laird asserts that the BOP transferred Plaintiff because Plaintiff obtained a complete list of the inmates housed in the SHU, including those inmates who were cooperating with the Government.  (Def.'s Br. at 15; Defs.' 56.1 Stmt. ¶ 46.)  Although Plaintiff claims that "Defendants have no proof plaintiff ever obtained such a list (or that such a list existed)," (Pl.'s Br. at 14.), he testified at great length during his deposition that he did in fact obtain such a list and that he did so in order to determine which inmates were cooperating with the Government.  (Cho Decl., Docket Entry 111, Ex. 1 at 105-11.) It is therefore undisputed that Plaintiff posed a risk to other inmates and the overall operation of the MDC.  The Court concludes that on this record, no reasonable factfinder could conclude that Laird would not have transferred Plaintiff absent a retaliatory motive.  See Salahuddin, 2006 WL 266574, at *5-6 (granting summary judgment on prisoner's First Amendment transfer-related claims

20

because prisoner failed to raise a genuine issue of fact as to whether prison officials concluded that prisoner's violation of prison policy required a transfer).  Accordingly, summary judgment on this claim is GRANTED and the First Amendment retaliation claim against Laird is DISMISSED.[5]

B.  Clemens

Plaintiff bases his First Amendment retaliation claim against Clemens on four separate factual allegations.  Plaintiff alleges that Clemens: (1) threatened to file false disciplinary reports to keep Plaintiff in the SHU if Plaintiff did not stop filing complaints; (2) instructed other prison staff to confiscate Plaintiff's personal belongings, including Plaintiff's administrative grievance forms and legal materials; (3) kicked a "food slot" closed on Plaintiff's hand; and (4) placed Plaintiff on a restricted "bag lunch" diet consisting of bread and bologna for five days (Compl. at 2-3).  The Court will address each allegation.

1.  Threat to File False Disciplinary Reports

Defendants argue that Clemens' alleged threat to file false disciplinary reports to keep Plaintiff in the SHU, even if true, does not constitute an adverse action because it would not

---

[5] However, as Defendants have not moved for summary judgment on the claims that Laird is liable under a theory of supervisor liability, Laird shall remain a defendant in this case.

deter a similarly situated inmate of ordinary firmness from exercising his constitutional rights. (Defs.' Br. at 15.) The Court disagrees. Although "non-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim," Ross v. Westchester, No. 10-CV-3937, 2012 WL 86467, at *7 (S.D.N.Y. Jan. 11, 2012), some verbal threats, depending on the specificity and context, can constitute an adverse action. Mateo v. Fishcer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); Hofelich v. Ercole, No. 06–13697, 2010 WL 184453, at *8 (S.D.N.Y. Jan. 11, 2010), reconsidered in part on other grounds, 2010 WL 1459740 (S.D.N.Y. Apr. 8, 2010). Here, given the directness and specificity of the alleged threat, a reasonable factfinder could decide that such a threat could deter a similarly situated inmate of ordinary firmness from filing prison grievances. See, e.g., Sanchez v. Velez, No. 08-CV-1519, 2009 WL 2252319, at *5 (S.D.N.Y. July 24, 2009) (finding allegation that prison official threatened to place inmate in "the box which . . . in prison parlance typically refers to punitive segregation" was sufficient to satisfy the adverse action element of a First Amendment retaliation claim); see also Ahlers v. Grygo, No. 02-CV-3256, 2009 WL 3587483, at *6 (E.D.N.Y. Oct. 27, 2009) ("The average inmate does not want to receive misbehavior reports, and it follows that the average inmate would be intimidated by the threat of receiving a false one.").

22

The Court likewise finds that a reasonable factfinder could find a causal connection between Plaintiff's grievances and Clemens' alleged threat to keep Plaintiff in the SHU. Indeed, Plaintiff alleges that Clemens threatened him specifically because prison officials were unhappy with Plaintiff's grievances. (Compl. at 2.) Accordingly, summary judgment on this ground is DENIED.

2.  <u>Cell Searches and Confiscation of Administrative Remedy Request Forms</u>

Defendants argue that the allegation that Clemens instructed other MDC prison staff to search Plaintiff's cell and confiscate Plaintiff's belongings, even if true, does not constitute an adverse action. (Defs.' Br. at 16.) The Court disagrees. Defendants correctly note that an inmate has no constitutional right to be free from a cell search, including retaliatory searches. <u>See</u> <u>Rodriguez v. McClenning</u>, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (noting that inmate "had no constitutional right to be free from cell searches of any kind, including retaliatory cell searches"). However, Plaintiff can assert a retaliation claim for retaliatory conduct in connection with a cell search--<u>i.e.</u>, that Clemens allegedly instructed MDC staff to confiscate Plaintiff's administrative remedy forms. <u>See</u> <u>id.</u> at 239-40 ("At the same time, [Plaintiff] can assert a retaliation claim for [the correction officer's] conduct in

conjunction with the cell search--the alleged retaliatory planting of evidence and retaliatory misbehavior report.").

The Court also finds that a reasonable factfinder could find a causal connection between Plaintiff's grievances and the cell search because Clemens allegedly directed MDC staff to confiscate Plaintiff's grievance forms--the tools he needed to file further grievances. Accordingly, summary judgment on this ground is DENIED.

### 3.   Physical Abuse

Defendants argue that there is no causal connection between the allegation that Clemens kicked a food slot closed on Plaintiff's hand and the exercise of Plaintiff's constitutional rights because the one grievance Plaintiff filed against Clemens post-dated the allegation of physical abuse. (Defs.' Br. at 16-17.) The Court again disagrees. Plaintiff attests that when Clemens kicked the food slot closed on Plaintiff's hand, he also said "let's see how you write now." (Pl.'s Br. at 16.) The Court finds that this allegation raises an issue of material fact concerning Clemens' motive and whether it was connected to Plaintiff's exercise of his constitutional rights. Accordingly, summary judgment on this ground is DENIED.

### 4.   Restricted Diet

As to Plaintiff's claim that Clemens placed Plaintiff on a restricted "bag lunch" diet, the Court finds that summary

judgment is appropriate.  Such an allegation, even if true, is "de minimis and not actionable" as a matter of law.  See, e.g., Snyder v. McGinnis, No. 03-CV-0902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (finding denial of food on two occasions de minimis as a matter of law).  Accordingly, summary judgment on this GROUND is GRANTED.

    C.    Schoenfelder

        Plaintiff alleges that Schoenfelder retaliated against him in three ways:  (1) by telling him that if he did not stop filing complaints Schoenfelder would transfer Plaintiff "to a place that makes Guantanamo Bay look like luxury"; (2) that Schoenfelder placed Plaintiff on a restricted "bag lunch" diet consisting of bread and bologna for five days; and (3) that "[i]t's believed that [Schoenfelder] then told C.O. Wheeless to begin harassment, and cell searches everyday [sic]."  (Compl. at 3-4.) The Court finds that the first two allegations do not constitute adverse actions as a matter of law and that there is no evidence in the record to support the third allegation.

        With respect to Schoenfelder's vague threat to transfer Plaintiff to an unspecific location, the Court finds that, unlike Clemens' threat to keep Plaintiff in the SHU, Schoenfelder's alleged threat lacks the specificity and directness to constitute an adverse action.  Summary judgment also is appropriate on Plaintiff's claim that Schoenfelder placed Plaintiff on a

25

restricted "bag lunch" diet because, as noted above, such an action is de minimus.  See Snyder, 2004 WL 1949472, at *11.  Accordingly, summary judgment on these claims is GRANTED.

With respect to Plaintiff's claim that he believes Schoenfelder directed Wheeless to conduct retaliatory cell searches, Plaintiff has not come forward with any evidence supporting such a claim.  Plaintiff's claim is conclusory and based solely on conjecture, and the Court finds that there is insufficient evidence to support it.  Accordingly, summary judgment on this claim is GRANTED.

D.   McFarland

Defendants also move for summary judgment on Plaintiff's claim that McFarland refused to process Plaintiff's grievances on two occasions.  Defendants correctly note that the refusal to process a small number of grievances does not constitute an adverse action.  See Ross, 2012 WL 86467, at *8.  However, Defendants characterize Plaintiff's allegation far too narrowly, claiming that Plaintiff alleges that McFarland refused to process only two grievances, when Plaintiff's Complaint can be read to allege that McFarland failed to process multiple grievances on two occasions. (Compl. at 4.)  Moreover, Plaintiff states under penalty of perjury that McFarland "would not process the forms and they would disappear."  (Pl.'s Br. at 8.)

Defendants also argue that there is no causal connection between Plaintiff's exercise of his constitutional rights and McFarland's alleged failure to process grievances because Plaintiff never filed a grievance against McFarland.  While it is generally true that a retaliatory motive cannot be imputed to a defendant based on grievances filed against another party, a plaintiff may establish a retaliatory motive with "corroborating statements from other officers or inmates." Edwards v. Horn, No. 10-CV-6194, 2012 WL 760172, at *18 (S.D.N.Y. 2012). Here, Aguilar, Plaintiff's former fellow inmate at the MDC, states in his affidavit that "[Plaintiff] repeatedly ask[ed] case manager McFarland for administrative remedy forms on numerous occasions. And each time McFarland would say 'No, you need to stop filing so damn much.'" (Aguilar Aff. at 17 ¶ 10 (emphasis in the original).) All of this taken together, creates a genuine issue of material fact as to McFarland's retaliatory motive.  Accordingly, summary judgment on the claims against McFarland is DENIED.

E.   Garcia

Plaintiff alleges that Garcia, a disciplinary hearing officer, "joined in the acts of the administration" and that Garcia attended a "S.H.U. meeting" at which Clemens and Schoenfelder told Garcia "to take the plaintiff's visits for his numerous complaints filed . . . ." (Compl. at 5.) Garcia is entitled to summary judgment on this claim because Defendants have shown that even

without an improper motivation Garcia still would have revoked Plaintiff's visitation privileges. Defendants have submitted unrebutted evidence that Garcia suspended Plaintiff's visitation privileges for 150 days because Plaintiff violated a BOP regulation prohibiting inmates from interfering with security devices in the prison. (Bork Decl. ¶¶ 35-40.) Accordingly, summary judgment on this claim is GRANTED.[6]

F.   Wheeless

Plaintiff alleges that Wheeless, at Schoenfelder's direction, conducted retaliatory searches of Plaintiff's cell. (Compl. at 4.) Plaintiff has not come forward with any evidence supporting such a claim. Plaintiff's claim is conclusory and based solely on conjecture, and the Court finds that there is insufficient evidence to support this claim. Accordingly, summary judgment on this claim is GRANTED.

G.   Henderson

Plaintiff alleges that Henderson spat in Plaintiff's food, threatened to poison him and "pay him back for each and every complaint [Plaintiff] made," refused to give Plaintiff his food on one occasion, denied Plaintiff recreation continuously, and destroyed several pieces of Plaintiff's mail. (Compl. at 4-5.)

---

[6] However, as previously noted, because Defendants have only moved for summary judgment on Plaintiff's claims of First Amendment retaliation, Plaintiff's claim against Garcia for due process violations remains.

28

Defendants first argue that these allegations do not rise to the level of adverse actions. (Defs.' Br. at 22.) The Court agrees with Defendants that Henderson's alleged refusal to give Plaintiff his food, even if true, does not rise to the level of adverse actions, as they are only de minimus. See Snyder, 2004 WL 1949472, at *11.

However, Plaintiff's allegation that Henderson told him that he would poison him at the first opportunity for filing grievances, coupled with the allegations that Henderson spat in Plaintiff's food, destroyed his mail, and "continuously" denied him recreation, clearly could chill a person of ordinary firmness from filing further complaints. See, e.g., Ford v. Palmer, 539 F. App'x 5, 7 (2d Cir. 2013) (holding that district court erred in reasoning, as a matter of law, that verbal threat to poison inmate was not direct and specific enough to constitute an adverse action); Lunney v. Brureton, No. 04-CV-2438, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007) (rejecting argument that denial of recreation was de minimis because plaintiff alleged that he was denied recreation on a regular basis), adopted by, 2007 WL 2050301 (S.D.N.Y. July 17, 2001)

Finally, Defendants argue that Plaintiff has failed to establish a causal connection between Henderson's actions and Plaintiff's grievances because "Henderson's alleged actions are not sufficient to deter a similarly situated individual of ordinary

firmness from exercising his constitutional rights . . . ."
(Defs.' Br. at 23.) However, as the Court noted above, the test
for whether a causal connection exists depends on the retaliatory
motive of the defendant, not whether the action constitutes an
adverse action. Accordingly, summary judgment is GRANTED on
Plaintiff's claim that Henderson deprived him of food on one
occasion but DENIED with respect to the remaining allegations.

## CONCLUSION

For the foregoing reasons, Defendants' motion for
partial summary judgment is GRANTED IN PART and DENIED IN PART.
Defendants' motion is GRANTED with respect to all claims in the
Complaint with the exception of the First Amendment retaliation
claims against (1) Clemens for (a) threatening to file false
disciplinary reports, (b) instructing MDC staff to confiscate
Plaintiff's grievance forms, and (c) kicking a food slot closed on
Plaintiff's hand; (2) McFarland for (a) refusing to process
Plaintiff's grievance forms, and (b) refusing to provide Plaintiff
with grievance forms; and (3) Henderson for (a) threating to poison
Plaintiff, (b) spitting in Plaintiff's food, (c) destroying
Plaintiff's mail, and (d) denying Plaintiff recreation time.

As the Court has granted Defendants' motion for summary
judgment with respect to all claims against Schoenfelder and
Wheeless, the Clerk of the Court is directed to TERMINATE
Schoenfelder and Wheeless as defendants in this action. However,

30

as Defendants have not moved for summary judgment on the claims that Laird is liable under a theory of supervisor liability and that Garcia violated Plaintiff's due process rights, Laird and Garcia shall remain defendants in this case.

Given Petitioner's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March   31  , 2014
           Central Islip, NY