UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEMETRIUS HILL,

                Plaintiff,

          v.                                 Civil Action No. cv-06-0126

PAUL LAIRD, WARDEN OF MDC, MR.       (Seybert, J.)
CLEMENS, ASSOCIATE WARDEN, CAPTAIN   (Shields, M.J.)
SCHOENFELDER, LT. MALDONADO, CASE
MANAGER McFARLAND, DANNY GARCIA,
D.H.O., WHEELESS C.O., HENDERSON, C.O.,

                Defendants.
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS
PAUL LAIRD AND DANIEL GARCIA**


                                  ROBERT L. CAPERS
                                  United States Attorney
                                  Eastern District of New York
                                  271 Cadman Plaza East, 7th floor
                                  Brooklyn, New York 11201


James R. Cho
Assistant United States Attorney
718-254-6519
james.cho@usdoj.gov

February 29, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY ........................................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 3

STANDARD OF REVIEW ........................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

      I.     Plaintiff's Claims Against Warden Laird Should Be Dismissed Because Plaintiff
           Failed to Exhaust his Administrative Remedies. ..................................................... 4

           A.     Standard for exhaustion under the PLRA. ................................................. 4

           B.     Plaintiff failed to exhaust his administrative  remedies with respect to his
                 claim against Warden Laird. ....................................................................... 5

           C.     Plaintiff is not excused from exhausting his claims
                 against Warden Laird. ................................................................................. 6

      II.    Plaintiff Cannot Establish a Claim Against Warden Laird Under a Theory of
           Supervisory Liability. ......................................................................................... 10

           A.     Plaintiff cannot establish that Warden Laird was personally
                 involved in any unconstitutional acts. ...................................................... 12

           B.     Warden Laird did not create a policy or custom under which
                 unconstitutional practices occurred or allowed the continuance of such a
                 policy or custom. ....................................................................................... 16

      III.   Plaintiff Cannot Establish a Due Process Claim against DHO Garcia. ............... 18

           A.     Plaintiff cannot establish any violation of his right to due process
                 where the temporary revocation of his visitation privileges does
                 not invoke a liberty interest. ..................................................................... 18

           B.     Plaintiff received due process in connection
                 with his disciplinary hearing. .................................................................... 20

      IV.   The Claims Against Warden Laird and DHO Garcia Should
           Be Dismissed Because They Are Entitled To Qualified Immunity. ..................... 23

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

### Cases

*Abernathy v. Strada*, No. 12-CV-6072, 2015 WL 997980 (E.D.N.Y. Mar. 6, 2015)................... 15

*Alfaro Motors, Inc., Ward*, 814 F.2d 883 (2d Cir. 1987)....................................................... 11, 13

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................................. 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 4

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)....................................................................... 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... *passim*

*Barney v. Bureau of Prisons*, No. 02-CV-5284, 2004 WL 2810108
  (E.D.N.Y. Dec. 8, 2004) .......................................................................................................... 5

*Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939
  (S.D.N.Y. June 26, 2009)............................................................................................ 11, 12, 14

*Beyoda v. Coughlin*, 91 F.3d 349 (2d Cir. 1996) ....................................................................... 18

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)......................................................................................................... *passim*

*Brooks v. DiFasi*, 112 F.3d 46 (2d Cir. 1997) ........................................................................... 19

*Butler v. Suffolk Cnty.*, 289 F.R.D. 80 (E.D.N.Y. 2013)............................................................ 12

*Cicio v. Graham*, No. 08-CV-534, 2009 WL 537534 (N.D.N.Y. Mar. 3, 2009)........................ 14

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ........................................................................ 12

*Crooks v. Warne*, 516 F.2d 837 (2d Cir. 1975).......................................................................... 22

*Davis v. Scherer*, 468 U.S. 183 (1984) ..................................................................................... 24

*Doe v. New York*, No. 10-CV-1792, 2012 WL 4503409
  (E.D.N.Y. Sept. 28, 2012)..................................................................................................... 12

*Felix-Torres v. Graham*, 687 F. Supp. 2d 38 (N.D.N.Y. 2009).................................................. 17

*Fernandez v. Callens*, No. 06-CV-0506, 2010 WL 4320362
  (W.D.N.Y. Oct. 29, 2010)...................................................................................................... 14

*Firestone v. Berrios*, No. 12-cv-0356, 2013 WL 297780 (E.D.N.Y. Jan. 22, 2013)................... 12

*Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004) ............................................................. 9

*Hallock v. Bonner*, 567 F. Supp. 2d 334 (N.D.N.Y. 2008) ............................................ 17

*Hallock v. Bonner*, 343 F. App'x 633 (2d Cir. 2009) .................................................... 17

*Hameed v. Mann*, 849 F. Supp. 169 (N.D.N.Y. 1994) ................................................. 22

*Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003
    (E.D.N.Y. Jan. 31, 2007) ......................................................................................... 7

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................. 24

*Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) ............................................. *passim*

*Hepworth v. Suffolk Cnty.*, 2:02-CV-6473, 2006 WL 2844408
    (E.D.N.Y. Sept. 29, 2006) ...................................................................................... 9

*Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000) ........... 3

*Hernandez v. Lindsay*, No. 08-CV-01495, 2011 WL 3163078
    (E.D.N.Y. July 22, 2011) ....................................................................................... 19

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1993) ....................................... 3

*Hill v. Tisch*, No. 02-CV-3901, 2009 WL 3698380 (E.D.N.Y. Oct. 20, 2009) ........... 10

*Hill v. U.S. Attorney's Office*, No. 08-cv-1045, 2009 WL 2524914
    (E.D.N.Y. Aug. 14, 2009) .................................................................................. 4, 5, 7

*Hunter v. Bryant*, 502 U.S. 224 (1991) ......................................................................... 24

*J.S. v. T'Kach*, No. 11 Civ. 103, 2014 WL 4100589 (S.D.N.Y. Aug. 20, 2014) ........... 14

*Jefferson v. Evans*, No. 11-CV-3558, 2011 WL 5156595
    (E.D.N.Y. Oct. 28, 2011) ................................................................................. 12, 13

*Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) ......................................................... 8

*Jones v. Fed. Bur. of Prisons*, No. 11-CV-4733, 2013 WL 5300721
    (E.D.N.Y. Sept. 19, 2013) ...................................................................................... 15

*Joyner v. Greiner*, 195 F. Supp. 2d 500 (S.D.N.Y. 2002) ............................................ 15

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995) ...................................... 25

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ................................................. 4

*Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007) ................................................................... 5

*McCullough v. Burroughs*, No. 04-CV-3216, 2005 WL 3164248
(E.D.N.Y. Nov. 29, 2005)........................................................................ 7

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................. 24

*Newton v. City of N.Y.*, 640 F. Supp. 2d 426 (S.D.N.Y. 2009).................. 14

*Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000) ................................... 3

*Pearson v. Callahan*, 129 S. Ct. 808 (2009)............................................ 24

*Plair v. City of New York*, 789 F. Supp. 2d 459 (S.D.N.Y. 2011) .............. 18

*Porter v. Nussle*, 534 U.S. 516 (2002)....................................................... 4

*Ramos Portocarrero v. Williams*, No. 08-CV-3618, 2011 WL 9833
(E.D.N.Y. Jan. 3, 2011) ........................................................................ 7

*Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012)................................... 12

*Reynoso v. Swezey*, 238 F. App'x 660 (2d Cir. 2007) ............................... 9

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991)................. 17

*Rivera v. Lempke*, 810 F. Supp. 2d 572 (W.D.N.Y. 2011) ....................... 11

*Sandin v. Conner*, 515 U.S. 472 (1995).................................................. 19

*Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010)......................................... 12

*Shakur v. Selsky*, 391 F.3d 106 (2d Cir. 2004) ................................. 20, 21

*Sims v. Artuz*, 230 F.3d 14 (2d Cir. 2000)............................................... 19

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) ........................................... 20

*Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. 2006)............................ 14

*Strano v. City of New York*, No. 97-CIV-0387, 1998 WL 338097
(S.D.N.Y. June 24, 1998)..................................................................... 17

*Tellier v. Fields*, 280 F.3d 69 (2d Cir. 2000) .......................................... 18

*Warrender v. United States*, No. 09-CV-2697, 2011 WL 703927
(E.D.N.Y. Feb. 17, 2011)...................................................................... 12

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000).......................... 4

*Whalen v. Fed. Bureau of Prisons*, No. 09-CV-1572, 2011 WL 2669112
   (E.D.N.Y. June 30, 2011) ............................................................................. 20

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ........................................... 4

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ................................................... 22

*Woodford v. Ngo*, 548 U.S. 81 (2006) .......................................................... 5

*Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004) ......................................... 8

## Statutes

42 U.S.C. § 1997e(a) ...................................................................................... 4

## Regulations

28 C.F.R. § 541.8 .......................................................................................... 21

28 C.F.R. § 542.13-.15 ............................................................................... 5, 8

## PRELIMINARY STATEMENT

Plaintiff Demetrius Hill, a pretrial detainee at the Metropolitan Detention Center in Brooklyn ("MDC"), filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against various individual defendant MDC employees alleging violations of his constitutional rights.  On March 31, 2014, this Court granted summary judgment dismissing Plaintiff's claims against former individual defendants MDC Captain Rick Schoenfelder ("Schoenfelder") and Senior Officer Terrell Wheeless ("Wheeless").  Defendants now move for summary judgment dismissing Plaintiff's claims against individual defendants Paul Laird ("Warden Laird"), former Warden of the MDC, and Daniel Garcia ("DHO Garcia"), an MDC Discipline Hearing Officer ("DHO") (hereinafter collectively, "Defendants").[1]

Plaintiff's January 6, 2006 complaint alleges that while he was incarcerated at the MDC from April through July 2005, the individual defendants violated his constitutional rights by harassing him and retaliating against him for repeatedly filing administrative remedy complaints about the MDC's staff's alleged dereliction of duty and unconstitutional conditions of confinement.  *See* Complaint at 1 (Dkt. No. 1).  With respect to defendant Warden Laird, Plaintiff alleges that Warden Laird's actions contributed to the MDC staff's dereliction of its duties and discouraged Plaintiff from filing his administrative remedies.  With respect to DHO Garcia, Plaintiff alleges that DHO Garcia's actions violated Plaintiff's due process rights.

Plaintiff's claims are ripe for dismissal.  First, individual defendant Warden Laird moves for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies.

---

[1] In his Complaint, Plaintiff also names former MDC Associate Warden Judd Clemens ("Clemens"), Lieutenant Frank Maldonado ("Maldonado"), Case Manager Patrick McFarland ("McFarland"), and Senior Officer Gregory Henderson ("Henderson").  *See* Complaint.  The Government does not represent Lt. Maldonado in this action.

Even assuming the Court excuses Plaintiff's failure to exhaust, Plaintiff cannot establish a claim for supervisory liability because individual defendant Warden Laird was not personally involved in any alleged violation of Plaintiff's constitutional rights, nor did he create a policy or custom under which unconstitutional practices occurred or were allowed to continue.

Second, individual defendant DHO Garcia moves for summary judgment on the grounds that the temporary revocation of Plaintiff's visitation rights as a disciplinary sanction does not implicate a liberty interest. Even assuming Plaintiff could establish the existence of a liberty interest, Plaintiff received full due process in connection with his disciplinary hearing.

Finally, the claims against individual defendants Warden Laird and DHO Garcia should be dismissed because they are entitled to qualified immunity because their conduct, even if true, did not violate any of Plaintiff's constitutional rights. Accordingly, the Court should grant Defendants' motion for summary judgment and dismiss the claims against individual defendants Warden Laird and DHO Garcia.

## PROCEDURAL HISTORY

On June 14, 2013, all of the defendants in this action moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies and failed to establish his retaliation claims against individual defendants Laird, Clemens, McFarland, Henderson, Schoenfelder, Wheeless and Garcia. *See* Dkt. No. 109-112. On March 31, 2014, after considering the submissions of all the parties, the Court granted in part and denied in part the summary judgment motion. *See* Mem. & Order (Dkt. No. 125). The Court granted summary judgment with respect to the claims against Schoenfelder and Wheeless, but denied the motion with respect to the claims against Clemens, Henderson and McFarland. *Id.*

With respect to individual defendants Warden Laird and DHO Garcia, the Court dismissed Plaintiff's claims that Laird and Garcia retaliated against him by transferring him from the MDC to USP Lewisburg or by revoking his visitation privileges.  *See* Mem. & Order at 19, 27-29 (Dkt. No. 125).  However, liberally construing Plaintiff's Complaint, the Court found that Plaintiff appeared to assert a cognizable claim against individual defendant Warden Laird under a theory of supervisory liability.  *See* Mem. & Order (Dkt. No. 125) at 7.  The Court also construed Plaintiff's Complaint as alleging that DHO Garcia had violated Plaintiff's due process rights by attending a "SHU meeting for the purpose of learning how the administration wants particular prisoners handled."  *See id*.  Pursuant to the Court's invitation that individual defendants Warden Laird and DHO Garcia move for summary judgment on these two claims, this motion addresses the two remaining claims against Warden Laird and DHO Garcia.

## STATEMENT OF FACTS

For a statement of the facts material to the arguments presented in this memorandum, the Court is respectfully referred to the Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 on Behalf of Defendants Paul Laird and Daniel Garcia ("Defs' 56.1 Stmt. ¶ __").

## STANDARD OF REVIEW

A district court must grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Hermès Int'l v. Lederer de Paris Fifth Ave., Inc*., 219 F.3d 104, 107 (2d Cir. 2000).  In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movants favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quotation omitted).  To defeat a motion for summary judgment, the non-movant must

come forward with "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). While a court must always "resolv[e] ambiguities and draw[] reasonable inferences against the moving party," the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 11, 12 (2d Cir. 1986). Unsupported allegations cannot create a material issue of fact. *See Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000). Moreover, factual disputes that are immaterial, irrelevant, or minor, cannot defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Where the moving party has demonstrated particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)).

## ARGUMENT

### I.      Plaintiff's Claims Against Warden Laird Should Be Dismissed Because Plaintiff Failed to Exhaust his Administrative Remedies.

#### A.      Standard for exhaustion under the PLRA.

The Prison Litigation Reform Act ("PLRA") provides that "no actions shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Hill v. U.S. Attorney's Office*, No. 08-cv-1045, 2009 WL 2524914, at *3 (E.D.N.Y. Aug. 14, 2009) (Seybert, J.). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also id*. at 524 (stating that *Bivens* plaintiffs must exhaust administrative remedies under the PLRA before filing suit).

4

The administrative grievance procedure available to federal inmates is set forth at 28 C.F.R. § 542.13-.15.  First, an inmate must attempt to informally resolve a complaint with the prison staff.  28 C.F.R. § 542.13(a).  If the inmate's claim is not resolved informally, the inmate may submit a formal, written Administrative Remedy Request on a form known as a BP-9 within "20 calendar days following the date on which the basis for the Request occurred."  *Id.* § 542.14. If dissatisfied with the Warden's response to the BP-9, the inmate may appeal to the Regional Director within 20 days using a BP-10 form.  *Id.* § 542.15(a).  In circumstances where the inmate "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution," the inmate may file directly with the Regional Director, bypassing filing with the Warden.  *See id.* § 542.14(d)(1).  A negative decision by the Regional Director must be appealed to the Bureau of Prisons' General Counsel within 30 days using the BP-11 form.  *See id.* § 542.15(a).

An inmate must pursue his claim through all four of these formal administrative steps in order to satisfy the exhaustion requirement of the PLRA.  *See Barney v. Bureau of Prisons*, No. 02-CV-5284, 2004 WL 2810108, at *1 (E.D.N.Y. Dec. 8, 2004) (Feuerstein, J.) (to satisfy exhaustion requirement, inmate must challenge prison condition in question to the highest level of administrative review before filing suit); *Macias v. Zenk*, 495 F.3d 37, 42-43 (2d Cir. 2007). Exhaustion is mandatory and is not at the discretion of the court.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (exhaustion is no longer left to the discretion of the district court, but is mandatory); *see also Hill*, 2009 WL 2524914, at *3.

**B.   Plaintiff failed to exhaust his administrative remedies with respect to his claim against Warden Laird.**

Plaintiff failed to exhaust his administrative remedies under the federal Bureau of Prison's ("BOP") inmate grievance procedure with respect to the claims against Warden Laird

before filing his lawsuit.[2]  Plaintiff filed 39 requests for administrative remedies with the BOP during the relevant time period, from April to July 2005.  Defs' 56.1 Stmt. ¶ 15.  Fourteen of these 39 requests alleged staff misconduct.  *See id.* at ¶ 16.  Plaintiff filed a steady stream of administrative remedies at MDC Brooklyn from April 6, 2005, until he was transferred to USP Lewisburg on July 21, 2005.  *See id.* at ¶¶ 6, 17-29, 31-35.  However, none of the 14 administrative remedy requests alleged that Warden Laird had engaged in any misconduct or supervised misconduct by MDC employees, nor did Plaintiff file a grievance against Warden Laird.  *See id.* at ¶¶ 17-29, 31-35, 37.

Plaintiff also sent two requests directly to the Regional Director -- claiming they were too sensitive to submit to the Warden.  *See id.* at ¶ 31.  The Regional Director denied both of these requests and instructed Plaintiff to re-file at the institutional level.  *See id.* at ¶¶ 32-35.  Plaintiff did not re-file his requests.  *See id.*  Under the PLRA, Plaintiff is required to administratively appeal any unsatisfactory responses; Plaintiff never appealed any of the responses he received from the Regional Director.  *See id.*  For these reasons alone, the Court should dismiss Plaintiff's claims against Warden Laird for failure to exhaust administrative remedies.

## C.    Plaintiff is not excused from exhausting his claims against Warden Laird.

Under certain circumstances, an inmate may be excused from the exhaustion requirement; however, Plaintiff cannot establish that his failure to exhaust his administrative remedies should be excused.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (setting forth a three-part inquiry for courts to determine instances when a plaintiff may be

---

[2] Defendants are mindful of the Court's prior ruling finding that issues of material fact exist that preclude summary judgment on the issue of whether Plaintiff's failure to exhaust his administrative remedies may be excused.  *See* Mem. & Order at 16 (Dkt. No. 125).  However, in light of Plaintiff's admission that Warden Laird never deterred Plaintiff from filing administrative remedies, Plaintiff has no excuse for failing to exhaust administrative remedies with respect to his claim of supervisory liability against Warden Laird.  Defs' 56.1 Stmt. ¶ 99.

excused from failing to exhaust administrative remedies).  Under the *Hemphill* three-part inquiry, the Court considers whether (1) administrative remedies were available to the plaintiff; (2) the defendant has forfeited the affirmative defense of non-exhaustion or if that defense is subject to estoppel; and (3) whether any special circumstances exist that justify the prisoner's failure to comply with administrative procedures.  *See id.*

The test to determine the availability of administrative remedies is objective and requires the court to inquire whether a similarly-situated individual of ordinary firmness would have deemed the remedies available.  *See McCullough v. Burroughs*, No. 04-CV-3216, 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (Block, J.); *Hill*, 2009 WL 2524914, at *5 (limited access to grievance procedures does not excuse exhaustion requirement).

Plaintiff's own actions illustrate not only that administrative remedies were available to him, but also that he knew how to avail himself of any available administrative remedies. Plaintiff successfully filed 39 requests for administrative remedies over a period of four months, highlighting his familiarity and proficiency with the administrative process.  *See* Defs' 56.1 Stmt. ¶ 15.  This knowledge and frequent use of the administrative remedy process establish Plaintiff's knowledge of, and access to, the grievance system.  *See Ramos Portocarrero v. Williams*, No. 08-CV-3618, 2011 WL 9833, at *6-*7 (E.D.N.Y. Jan. 3, 2011) (Townes, J.); *Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003, at *8 (E.D.N.Y. Jan. 31, 2007) (Trager, J.) (plaintiff who filed grievances demonstrates his knowledge and access to the grievance system).  Plaintiff filed and pursued all of these 39 administrative remedy requests during the exact same period that he claims he was being prevented from filing those types of claims.  *See* Defs' 56.1 Stmt. ¶¶ 15-36.

Notably, despite Plaintiff's claims that Warden Laird either directly or indirectly participated in some kind of intimidation or interference with Plaintiff's filing administrative

claims, this did not deter Plaintiff from filing a grievance directly to the BOP's Regional

Director, a higher level BOP authority that was outside the MDC.  *See* Defs' 56.1 Stmt. ¶¶ 31-

35; *Hemphill*, 380 F.3d at 688 (noting that while intimidation may deter internal complaints,

there is nothing deterring an inmate of 'ordinary firmness' from appealing to a "greater authority

within the prison system").

Plaintiff always had the option of filing a "sensitive" complaint directly with the

Regional Director, which would allow him to bypass the Warden and any internal staff members

if he was facing intimidation.  *See* 28 C.F.R. § 542.14(d)(1).  Plaintiff was well aware of this

option to file a sensitive request, and availed himself of this option on two separate occasions.

*See* Defs' 56.1 Stmt. ¶¶ 31-35.  Plaintiff's ability to file sensitive requests with the Regional

Director and his successful filing of 39 other requests for administrative remedies, indicates not

only that administrative remedies were available to the Plaintiff, but also that he was not

intimidated and that no one actually interfered with his ability to pursue his administrative

remedies because he actually pursued them.  *See* Defs' 56.1 Stmt. ¶¶ 15-36.  Thus, Plaintiff

cannot claim in good faith that administrative remedies were not available to him in an attempt to

excuse his failure to exhaust.

Second, in determining whether the Plaintiff is excused from failing to exhaust, the court

should consider whether the defendant has forfeited the affirmative defense of non-exhaustion.

*See Hemphill*, 380 F.3d at 686; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).

Defendants raised the defense of exhaustion in their answer.  *See* Ans. (Dkt. No. 22).  Warden

Laird has not waived the argument that Plaintiff failed to exhaust his administrative remedies.

Next, the court should consider whether Warden Laird's defense is subject to estoppel.

*Hemphill*, 380 F.3d at 686; *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d Cir. 2004).  To establish

estoppel against the individual defendant, the plaintiff must show "(1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment" as well as "affirmative misconduct." *Hepworth v. Suffolk Cnty.*, 2:02-CV-6473, 2006 WL 2844408, at \*6 (E.D.N.Y. Sept. 29, 2006) (Vitaliano, J.) (citation omitted). Plaintiff is unable to show that Warden Laird's alleged actions prevented him from exhausting his administrative remedies and cannot support an argument of estoppel.

Warden Laird is not estopped from asserting an affirmative defense of exhaustion as he did not prevent or deter Plaintiff from filing administrative remedy requests. *See Reynoso v. Swezey*, 238 F. App'x 660, 663 (2d Cir. 2007) (plaintiff could not assert estoppel against officials where failure to appeal not attributable to any threats or fear of retribution from prison staff). Indeed, in Plaintiff's deposition, Plaintiff himself acknowledges that Warden Laird never deterred him from filing any requests for administrative remedies. Defs' 56.1 Stmt. ¶ 99. Plaintiff demonstrated on numerous occasions that he could obtain the appropriate forms, submit them to the correct individual, and receive a timely response. Defs' 56.1 Stmt. ¶¶ 15-36. Because Warden Laird did not interfere with Plaintiff's ability to exhaust his administrative remedies, Plaintiff cannot claim that Warden Laird is estopped from asserting that Plaintiff failed to exhaust his administrative remedies.

Finally, in determining whether Plaintiff is excused from exhausting his administrative remedies, the court considers whether any special circumstances exist that justify the prisoner's failure to comply with administrative procedures. *See Hemphill*, 380 F.3d at 686. Courts have interpreted "special circumstances" as circumstances that might understandably lead an uncounseled inmate to fail to file grievances in the usual, correct way. *See Giano v. Goord*, 380 F.3d 670, 676-78 (2d Cir. 2004) (plaintiff excused from the exhaustion requirement when he

9

read objectively ambiguous prison regulations incorrectly and relied on them); *see also Hill v. Tisch*, No. 02-CV-3901, 2009 WL 3698380, at *6 (E.D.N.Y. Oct. 20, 2009) (Hurley, J.).

In this case, Plaintiff can show no special circumstances that prevented him from exhausting administrative remedies. Unlike in *Giano*, Plaintiff does not allege that he mistakenly relied on any BOP provisions or guidelines in deciding not to exhaust his administrative remedies. To the contrary, as noted above, Plaintiff was very familiar with the administrative remedy process and had repeatedly engaged in it. Defs' 56.1 Stmt. ¶¶ 15-36 (making reference to the exhaustion requirement); ¶ 4 (detailing the numerous lawsuits which Plaintiff has filed in federal court against various prison officials). There were no special circumstances preventing Plaintiff from exhausting his administrative remedies -- Plaintiff decided this course of action on his own -- and Plaintiff's claims against Warden Laird should be dismissed for failure to exhaust his administrative remedies.

## II. Plaintiff Cannot Establish a Claim Against Warden Laird Under a Theory of Supervisory Liability.

Even assuming *arguendo* that the Court excuses Plaintiff's failure to exhaust his administrative remedies against individual defendant Warden Laird, Plaintiff's claims against Warden Laird should be dismissed. Plaintiff cannot establish that Warden Laird was personally involved in any alleged violation of Plaintiff's constitutional rights, nor can Plaintiff establish that Warden Laird created a policy or custom under which unconstitutional practices occurred or were allowed to continue.

The *sine qua non* of a *Bivens* claim is personal participation by the sued federal employee in the alleged constitutional violation, and the doctrine of *respondeat superior* does not apply in *Bivens* actions. Controlling Supreme Court precedent establishes that federal officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

10

superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  In *Iqbal*, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.  The Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677.  Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*; *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (*Bivens* defendant must have been "personally involved in the claimed constitutional violation.").

Because the doctrine of *respondeat superior* does not apply, a supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates.  *See Iqbal*, 556 U.S. at 676; *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (citation omitted); *Rivera v. Lempke*, 810 F. Supp. 2d 572, 576 (W.D.N.Y. 2011) ("[m]ere failure to correct, or acquiescence in, a lower-level employee's violation is not enough").  A *Bivens* complaint that does not allege the personal involvement of each defendant is "fatally defective on its face." *Alfaro Motors. Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).  Government officials "cannot be held liable unless they themselves" engaged in unconstitutional conduct; it is not enough for a defendant to simply have held a high position of authority.  *See Iqbal*, 556 U.S. at 683; *id.* at 693 (each Government official, title notwithstanding, is only liable for his or her own misconduct).

Under *Iqbal*, Plaintiff must establish that Warden Laird had personal involvement in the alleged constitutional violations, or that Warden Laird created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom.  *See*

*Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 94 (E.D.N.Y. 2013) (Seybert, J.) ("[A] supervisory

official can . . . be held liable if he 'participated directly in the alleged constitutional violation

[or] . . . created a policy or custom under which the unconstitutional practices occurred, or

allowed the continuance of such a policy or custom.'");[3] *Warrender,* 2011 WL 703927, at *5 n.1;

*Bellamy*, 2009 WL 1835939 at *4 ("a supervisor is only held liable if that supervisor participates

directly in the alleged constitutional violation or if that supervisor creates a policy or custom

under which unconstitutional practices occurred . . . ."); *see, e.g., Scott v. Fischer*, 616 F.3d 100,

109-10 (2d Cir. 2010).  As discussed below, the allegations in the Complaint are not sufficient to

make out a plausible claim that Warden Laird had any personal involvement in any constitutional

violations, or that Warden Laird created a policy or custom under which unconstitutional

practices occurred.  *See Bellamy*, 2009 WL 1835939, at *4.

> **A.    Plaintiff cannot establish that Warden Laird was**
> **personally involved in any unconstitutional acts.**

To be liable under *Bivens*, a defendant must have been "personally involved in the

claimed constitutional violation."  *Arar*, 585 F.3d at 569; *Jefferson v. Evans*, No. 11-CV-3558,

---

[3]  The Second Circuit in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), listed five ways
that a plaintiff could establish supervisory liability -- not just the two described above --
including failure to remedy a wrong after being informed of the violation, grossly negligent
supervision of subordinates who committed the wrongful acts, and deliberate indifference to the
rights of inmates.  *See* 58 F.3d at 873.  However, the "continuing vitality" of these additional
methods has "engendered conflict within [the Second] Circuit" due to the Supreme Court's
decision in *Iqbal*.  *See Reynolds v. Barrett*, 685 F.3d 193, 206 (2d Cir. 2012).  In *Iqbal*, the
Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's
discriminatory purpose amounts to the supervisor's violating the Constitution."  556 U.S. at 677.
Although the Second Circuit has yet to determine the effects of *Iqbal* on the *Colon*-factors, the
weight of authority among the district courts in the Eastern District of New York suggests that
only two of the *Colon*-factors -- direct participation and the creation of a policy or custom --
survive *Iqbal*.  *See Butler*, 238 F.R.D. at 94 n.8 (citing *Firestone v. Berrios*, No. 12-cv-0356,
2013 WL 297780, at *9-*10 (E.D.N.Y. Jan. 22, 2013) (Spatt, J.)); *Doe v. New York*, No. 10-CV-
1792, 2012 WL 4503409, at *8 n.3 (E.D.N.Y. Sept. 28, 2012) (Dearie, J.); *Warrender v. United
States*, No. 09-CV-2697, 2011 WL 703927, at *5 n.1 (E.D.N.Y. Feb. 17, 2011) (Matsumoto, J.).

2011 WL 5156595, at *2 (E.D.N.Y. Oct. 28, 2011) (Seybert, J.) (vicarious liability is inapplicable to *Bivens* suits; plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution) (citations omitted). A *Bivens* complaint that does not allege the personal involvement of each defendant is "fatally defective on its face." *Alfaro Motors*, 814 F.2d at 886.

Plaintiff alleges that Warden Laird should be held liable because Plaintiff "complained to him continuously and on numerous occasions, all to no avail" and that Warden Laird "turned a blind eye to the abuses of his staff and directly condoned their actions." Complaint at 6 (Claim Seven). Specifically, Plaintiff alleges that the "warden acquiesced in the actions of staff and was deliberately indifferent to complaints." *Id.* However, Plaintiff fails to identify with any specificity the alleged actions that Warden Laird personally committed that violated his constitutional rights. Tellingly, Plaintiff recently requested that the Court "sever the trial of '[W]arden Laird.'" *See* Plaintiff's letters filed on October 26, 2015 and February 4, 2016 (Dkt. Nos. 144 and 148). In his October 2015 letter, Plaintiff admits that he does not allege that Laird "personally" violated Plaintiff's constitutional rights and that Warden Laird "is not being sued for perpetrating these acts against 'Plaintiff' personally." Dkt. No. 144; *see also* Dkt. No. 148. Plaintiff's admission highlights the lack of Warden Laird's personal involvement in any alleged constitutional violations.

Further, Plaintiff fails to specify the alleged actions performed by staff members that Warden Laird allegedly condoned. Plaintiff's conclusory allegations are not sufficient to create a question of material fact and are similar to the conclusory allegations found insufficient in *Iqbal*. *See Iqbal*, 556 U.S. at 678, 679 (quotation omitted) (Complaint rife with "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked

13

assertion[s]" which are "not entitled to the assumption of truth."); *Fernandez v. Callens*, No. 06-CV-0506, 2010 WL 4320362, at *6 (W.D.N.Y. Oct. 29, 2010) (granting defendants' motion for summary judgment on supervisory liability claim where plaintiff presented no more than conclusory allegations).

Even assuming the Court finds that Plaintiff has asserted allegations relating to Warden Laird with sufficient specificity, Plaintiff's allegation that he complained to Warden Laird about other staff members and that Warden Laird ignored his complaints does not establish *Bivens* liability. The Court in *Iqbal* explicitly rejected the argument raised by Plaintiff that supervisors may be held liable for knowing about, and failing to correct, their subordinates' actions. *See Iqbal*, 556 U.S. at 677; *see also J.S. v. T'Kach*, No. 11 Civ. 103, 2014 WL 4100589, at *9 (S.D.N.Y. Aug. 20, 2014) (*Iqbal* made clear that allegations indicating nothing more than a defendant's passive acquiescence in the misconduct of subordinates are insufficient to establish *Bivens* liability); *Bellamy*, 2009 WL 1835939 at *4, *6 (*Iqbal* eliminated supervisory liability in situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate); *Newton v. City of N.Y.*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*."); *Cicio v. Graham*, No. 08-CV-534, 2009 WL 537534, at *7 (N.D.N.Y. Mar. 3, 2009) ("Vague and conclusory allegations that a supervisor has failed to . . . properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see, e.g.*, *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006) (failure of supervisory official to take action in response to a letter complaining of unconstitutional conduct insufficient to demonstrate personal involvement).

14

To the extent Plaintiff alleges that the removal of administrative remedy forms from his cell constitutes a constitutional violation, this is undermined by Plaintiff's specific admissions under oath that Warden Laird did not personally remove any administrative remedies from his cell.  Defs' 56.1 Stmt. ¶ 101.  Further, Warden Laird never directed MDC employees to remove administrative remedy forms from Plaintiff's cell, nor had he ever directed MDC employees to prevent Plaintiff from filing administrative remedy requests.  *Id*. at ¶¶ 103, 104.

Plaintiff's claim against Warden Laird is a classic example of an improper effort to hold Warden Laird liable for the allegedly unconstitutional conduct of his subordinates, under a theory of *respondeat superior*.  *See, e.g., Iqbal*, 556 U.S. at 676 (to state a constitutional claim, "a Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Under controlling Supreme Court precedent, any such claim is legally meritless and should be dismissed.  *See id.*

To the extent Plaintiff alleges that Warden Laird violated his constitutional rights by personally denying Plaintiff's grievances, it is well settled that the denial of administrative grievances by prison officials is an insufficient basis upon which any plaintiff can establish the requisite personal involvement to sustain a constitutional claim against those officials.  *See Abernathy v. Strada*, No. 12-CV-6072, 2015 WL 997980, at *4 (E.D.N.Y. Mar. 6, 2015) (Irizarry, J.) (denial of administrative grievances by prison officials insufficient basis upon which any plaintiff can establish the requisite personal involvement to sustain a constitutional claim against officials); *Jones v. Fed. Bur. of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *9 (E.D.N.Y. Sept. 19, 2013) (Matsumoto, J.) (dismissing plaintiff's *Bivens* claim against the warden because "the simple denial of a grievance [by the warden] does not constitute personal involvement"); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("The fact that

Superintendent Greiner affirmed the denial of plaintiff's grievance -- is insufficient to establish personal involvement").

In sum, Plaintiff fails to allege that Warden Laird had any personal involvement whatsoever in any of the alleged constitutional violations of which Plaintiff complains. Consequently, having failed to allege, let alone establish, any personal involvement in any constitutional violations by Warden Laird, all of Plaintiff's claims against Warden Laird should be dismissed.  *See Iqbal*, 556 U.S. at 676.

> **B.    Warden Laird did not create a policy or custom
> under which unconstitutional practices occurred or
> allowed the continuance of such a policy or custom.**

Not only is Plaintiff unable to establish Warden Laird's personal involvement in any constitutional violations, Plaintiff cannot establish that Warden Laird created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom.

As an initial matter, Plaintiff fails to identify any policy that Warden Laird created under which unconstitutional practices occurred or were allowed to continue.  Instead, Plaintiff attempts to assert that Warden Laird created a "custom" that prevented Plaintiff from filing administrative remedies by encouraging MDC employees to remove administrative remedy forms from Plaintiff's cell.  *See* Complaint at 6 (Claim Seven).

In support of the contention that Warden Laird created a custom by which prison officials removed administrative remedy forms from Plaintiff's cell, Plaintiff alleges that he is "aware of at least one incident in which the warden initiated the act of taking a prisoners [sic] BP9's, 10's and 11's - this in conjunction with his dereliction of duty set the precedent and tone of his subordinates."  Complaint at 6 (Claim Seven).  To the extent the Court interprets Plaintiff's

allegation to suggest that Warden Laird either created or participated in a custom or practice of constitutional rights violations, these contentions are insufficient to establish *Bivens* liability.

As an initial matter, Plaintiff's bald allegation of the existence of a policy or custom is conclusory and, in and of itself, insufficient to establish Warden Laird implemented a policy or custom of taking prisoners' administrative remedy forms.

Plaintiff concedes that Warden Laird did not personally remove administrative remedy forms from Plaintiff's cell. Defs' 56.1 Stmt. ¶ 101. Further, Warden Laird did not "initiate[] the act" of taking administrative remedy forms from any other inmate. Defs' 56.1 Stmt. ¶¶ 102, 103.

Plaintiff alleges that he observed Warden Laird remove administrative remedy forms from another inmate's cell on one occasion. *See* Complaint at 6 (Claims Seven). Even assuming Warden Laird, while serving as the MDC's warden, removed administrative remedy forms from another inmate on one occasion, which Warden Laird denies and for which Plaintiff submits no evidence other than his own bald allegation, Defs' 56.1 Stmt. ¶ 102, a single incident involving an employee will not support allegations of an official custom or policy. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (noting that a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice" to show a policy that violates equal protection); *Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 55 (N.D.N.Y. 2009); *see also Strano v. City of New York*, No. 97-CIV-0387, 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998) (allegations involving only a single incident are usually insufficient to show the existence of an official policy or custom for purposes of showing personal involvement); *Hallock v. Bonner*, 567 F. Supp. 2d 334, 339 (N.D.N.Y. 2008) (granting summary judgment for federal customs officials where the record was "devoid of any evidentiary support" that they created a relevant custom or policy), *aff'd* 343 F. App'x 633 (2d Cir. 2009); *see, e.g.,*

*Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (two cases of violence that

occurred several years prior to violence against plaintiff insufficient to establish a policy or

custom of violence against prisoners at detention facilities).  For these reasons, Plaintiff cannot

establish that former Warden Laird created a policy or custom under which constitutional

practices occurred or allowed the continuance of such a policy or custom.  Thus, Plaintiff cannot

establish a claim of supervisory liability against former Warden Laird and the Court should

dismiss all of Plaintiff's claims against former Warden Laird.

**III.    Plaintiff Cannot Establish a Due Process Claim against DHO Garcia.**

Plaintiff cannot establish a due process claim against DHO Garcia in connection with the

temporary revocation of Plaintiff's visitation privileges.  To determine whether Plaintiff has

stated a claim for a constitutional procedural due process violation, a Court must consider:  "(1)

whether the plaintiff had a protected liberty interest . . . and if so, (2) whether the deprivation of

that liberty interest occurred without due process of law."  *Tellier v. Fields*, 280 F.3d 69, 79-80

(2d Cir. 2000) (quoting *Beyoda v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996) (citations

omitted)).  As discussed below, Plaintiff cannot establish a liberty interest in connection with the

temporary revocation of his visitation privileges.  Even assuming the temporary revocation of

Plaintiff's visitation privileges invaded a liberty interest, Plaintiff cannot establish that DHO

Garcia violated his due process rights in connection with Plaintiff's July 2005 disciplinary

hearing.

> **A.    Plaintiff cannot establish any violation of his right to
> due process where the temporary revocation of his
> visitation privileges does not invoke a liberty interest.**

To establish a violation of his constitutional due process rights, Plaintiff must first show

that he experienced a loss of a liberty interest.  Disciplinary actions resulting in loss of privileges

do not automatically implicate due process.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995)

(limiting the due process inquiry to disciplinary sanctions that "impose[] atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life," and finding that

petitioner's solitary confinement did not meet that threshold); *Sims v. Artuz*, 230 F.3d 14, 22 (2d

Cir. 2000); *Hernandez v. Lindsay*, No. 08-CV-01495, 2011 WL 3163078, at *5 (E.D.N.Y. July

22, 2011) (Feuerstein, J.).  Factors indicating that a sanction is typical in relation to the ordinary

incidents of prison life include its duration, whether it is expressly authorized by BOP

regulations, and whether it was fashioned to pursue "the legitimate goals of prison management

and prisoner rehabilitation."  *Hernandez*, 2011 WL 3163078, at *5; *Brooks v. DiFasi*, 112 F.3d

46, 49 (2d Cir. 1997) (whether a disciplinary method imposes an "atypical and significant

hardship," specific circumstances of the punishment will be considered including the reason for

the sanction, as well as the conditions and duration of the sanction).

Here, DHO Garcia's temporary revocation of Plaintiff's visitation privileges complied

with prison regulations and cannot reasonably be considered an "atypical and significant

hardship."  On May 11, 2005, Plaintiff received an Incident Report (no. 1340466) for

"Interfering with Security Devices" by placing cardboard in a locking device.  Defs' 56.1 Stmt.

¶¶ 44-52.  Interfering with security devices is a high severity offense, for which the loss of

inmate privileges is an available sanction under prison regulations.  Defs' 56.1 Stmt. ¶¶ 79, 80,

81.  As a result of the May 11 violation, DHO Garcia, among other things, revoked Plaintiff's

visitation privileges for 150 days, which was well within the range of permissible sanctions.

Defs' 56.1 Stmt. ¶¶ 84, 85.  Notably, Plaintiff is complaining about the fact that DHO Garcia

issued a more lenient penalty than prison regulations would have permitted.  *See id.*[4]

Under these facts, Plaintiff simply cannot establish that the discipline at issue – namely,

the temporary revocation of Plaintiff's visitation privileges -- is a disciplinary sanction that

constitutes an "atypical and significant hardship" of constitutional significance.  In this case,

Plaintiff's temporary loss of his visitation privileges involves only the loss of an inmate's

privileges, and thus, does not invoke a liberty interest.  Because Plaintiff cannot establish the

deprivation of a liberty interest, he cannot establish a constitutional right to due process and his

claims against DHO Garcia should be dismissed.

**B.      Plaintiff received due process in connection with his disciplinary hearing.**

Even assuming, *arguendo*, that this Court were to find that Plaintiff possessed a liberty

interest in connection with the temporary revocation of his visitation privileges, which

Defendants deny, Plaintiff received all the due process to which he was entitled in connection

with his July 2005 disciplinary hearing.

To ensure inmates receive due process in connection with a disciplinary hearing, inmates

are entitled to:  (1) advanced written notice of the charges against them; (2) a hearing affording

them a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and

impartial hearing officer; and (4) a written statement of the disposition, including the evidence

relied upon and the reasons for the disciplinary actions taken.  *See Sira v. Morton*, 380 F.3d 57,

69 (2d Cir. 2004); *see also Whalen v. Fed. Bureau of Prisons*, No. 09-CV-1572, 2011 WL

2669112, at *4 (E.D.N.Y. June 30, 2011) (Vitaliano, J.); *Shakur v. Selsky*, 391 F.3d 106, 119 (2d

---

[4] The Court in its Memorandum & Order found that DHO Garcia had the right to revoke
Plaintiff's visitation privileges for violating a BOP regulation prohibiting inmates from
interfering with security devices in the prison.  *See* Mem. & Order at 28 (Dkt. No. 125).

Cir. 2004); 28 C.F.R. § 541.8 (setting forth procedures before a discipline hearing officer).  DHO

Garcia's attendance at a SHU meeting did not violate any of the four elements listed above and

Plaintiff received all the due process protections afforded to inmates in connection with his

disciplinary hearing.

First, Plaintiff was provided advance written notice of the charges against him.  Defs'

56.1 Stmt. ¶¶ 52, 54, 55-60.  Plaintiff was provided written notice of the disciplinary charge on

May 11, 2005, in advance of the DHO hearing, in the form of an incident report.  *See id.*  The

incident report set forth the charges against Plaintiff and was issued nearly two months prior to

Plaintiff's disciplinary hearing.  *See id.*

Second, Plaintiff took part in the disciplinary hearing affording him an opportunity to call

witnesses and to present documentary evidence.  Defs' 56.1 Stmt. ¶¶ 56, 66, 71, 72.  Plaintiff

requested Lt. Maldonado as a witness and Lt. Maldonado appeared at the hearing.[5]  *See id.* at ¶¶

71, 72.  Plaintiff was also provided a staff representative to assist him with the DHO hearing.

*See id.* at ¶ 67.

Third, Plaintiff's hearing was conducted by DHO Garcia, and DHO Garcia was an

impartial decision maker, uninvolved in the incident at issue.  Defs' 56.1 Stmt. ¶¶ 61, 62; *see*

*also* 28 C.F.R. § 541.8.

Plaintiff alleges that Clemens and Schoenfelder told DHO Garcia at a SHU meeting to

take away Plaintiff's visitation privileges.  *See* Complaint at 5 (Claim Six).  Plaintiff does not

expressly state that DHO Garcia was biased or not impartial.  Instead, Plaintiff suggests that

Clemens and Schoenfelder influenced DHO Garcia's decision, thus depriving Plaintiff of his

---

[5] Plaintiff claims he attempted to call Senior Officer Clardy as a witness; however, in Plaintiff's
Notice of Discipline Hearing before the DHO form, Plaintiff failed to request Senior Officer
Clardy as a witness.  Defs' 56.1 Stmt. ¶¶ 54, 56, 57.  Nevertheless, Senior Officer Clardy
provided DHO Garcia with a witness statement *in lieu* of appearing in person.  *Id.* at ¶ 74.

right to a fair and impartial hearing officer.  The standard for finding a fair and impartial hearing

officer requires that the hearing officer not be so insufficiently impartial as to "present such a

hazard of arbitrary decisionmaking."  *Wolff v. McDonnell*, 418 U.S. 539, 570, 571 (1974).

Here, Plaintiff fails to establish that DHO Garcia was neither fair, nor impartial.  Garcia,

as the DHO, attends weekly SHU meetings; DHO Garcia did not attend SHU meetings solely

because Plaintiff had a disciplinary hearing scheduled.  Defs' 56.1 Stmt. ¶ 96.  At SHU meetings,

DHO Garcia informs the other participants as to any upcoming disciplinary hearings, but does

not discuss the substance of those cases.  Defs' 56.1 Stmt. ¶¶ 96, 97.  DHO Garcia's attendance

at SHU meetings does not call into question DHO Garcia's ability to serve as a fair and impartial

hearing officer.  *See, e.g., Hameed v. Mann*, 849 F. Supp. 169, 173 (N.D.N.Y. 1994) (denying

plaintiff's motion on the ground of hearing officer's partiality where plaintiff introduced no facts

to indicate that the meeting between hearing officer and Commissioner played any role in

hearing officer's impartiality); *see also Crooks v. Warne*, 516 F.2d 837, 839 (2d Cir. 1975)

(finding hearing officer unbiased where member of adjustment committee discussed with the

warden procedures which should be followed).

Even assuming, for purposes of summary judgment, that Clemens and Schoenfelder told

DHO Garcia to "take [away] plaintiff's visits," DHO Garcia would still make his own

independent determination as to the appropriate sanction to impose on Plaintiff.  Defs' 56.1 Stmt.

¶¶ 82, 91.  Plaintiff's bald allegations are insufficient to establish that DHO Garcia was not fair

or impartial or that his decision-making was "arbitrary."  *Wolff*, 418 U.S. at 571.  Plaintiff's

claims of a constitutional violation are further undermined by the fact that the punishment DHO

Garcia administered – *i.e.*, a 150 day temporary revocation of Plaintiff's visitation privileges --

was well within the range of permissible sanctions, significantly less than the maximum sanction

permitted under prison regulations, and consistent with progressive discipline.[6]  Defs' 56.1 Stmt. ¶¶ 84, 85, 86-90.

Finally, Plaintiff was issued a written statement of the disposition describing the events and the rationale for the disciplinary action.  Defs' 56.1 Stmt. ¶¶ 83, 92.  The DHO's report set forth Garcia's decision and described the underlying reasoning behind that decision.  *Id*. at ¶ 83.  The DHO report stated that the finding was based on, and fully considered, the written statement of the reporting officer and Senior Officer J. Clardy, who witnessed the incident, as well as Plaintiff's own testimony.  *See id*. at ¶¶ 75, 76, 77, 83.  As reflected in the DHO's report, the decision expressly relied on the evidence of record in the proceeding.  *Id*. at ¶ 75.  Once the determination had been made, Plaintiff was provided with a written statement of the evidence relied upon and the reasons for the decision and after receiving the DHO's decision, Plaintiff appealed the decision by filing an administrative remedy with the BOP's Regional Office and subsequently appealed to the Central office.  *Id*. at ¶¶ 83, 92-94.

In sum, Plaintiff's due process claim is meritless and should be dismissed.  Plaintiff did not possess a liberty interest giving rise to due process protection. Even if Plaintiff did possess a liberty interest giving rise to due process protection, Plaintiff received the full due process to which he was entitled.  DHO Garcia was a fair and impartial hearing officer and he did not violate Plaintiff's due process rights in any way.

**IV.    Claims Against Warden Laird and DHO Garcia Should Be
         Dismissed Because They Are Entitled To Qualified Immunity.**

Warden Laird and DHO Garcia are, in any event, entitled to qualified immunity against Plaintiff's claim, because their conduct did not violate any of Plaintiff's constitutional rights.

---

[6] The loss of visiting privileges for 150 days for the May 11, 2005 violation was consistent with the progressive discipline imposed on Plaintiff for his prior misconduct.  Defs' 56.1 Stmt. ¶¶ 87-90.

*See Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  Qualified immunity shields individual defendants performing discretionary functions

from liability for civil damages "insofar as their conduct does not violate clearly established . . .

constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.

Qualified immunity is "an immunity from suit rather than the mere defense to liability," and

must be considered early in the proceedings so that the expense of trial may be avoided.  *See*

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Pearson*, 129 S. Ct. at 815.

     Federal employee defendants sued under *Bivens* theories, such as former Warden Laird

and DHO Garcia, may raise qualified immunity as a defense to being sued.  The purpose of the

immunity is to "recognize[] that officials can act without fear of harassing litigation only if they

reasonably can anticipate when their conduct may give rise to liability for damages and only if

unjustified lawsuits are quickly terminated."  *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

Qualified immunity is thus intended to enable individual defendants to anticipate when their

conduct may give rise to liability and to quickly terminate unjustified lawsuits.  *See Anderson v.*

*Creighton*, 483 U.S. 635, 646 (1987).  It is an entitlement not to be forced to litigate the

consequences of official conduct, and is, therefore, conceptually distinct from the merits of a

plaintiff's claims.  *See Mitchell*, 472 U.S. at 527-28.  Qualified immunity affords an official

broader protection than does the defense that no constitutional or statutory violation occurred.

*See Hunter v. Bryant*, 502 U.S. 224, 227-29 (1991).

     An individual defendant performing discretionary duties is immune from personal

liability unless his conduct violates a "clearly established statutory or constitutional right[]."

*Harlow*, 457 U.S. at 818; *Pearson*, 129 S. Ct. at 815.  Even where a right is clearly established, a

defendant is immune from liability if it was objectively reasonable to believe that his acts did not violate that right.  *See Kaluckzy v. City of White Plains*, 57 F.3d 202, 207 (2d Cir. 1995).

The first prong of the qualified immunity test inquires whether there has been a constitutional violation.  Here, as set forth in Parts II and III above, Plaintiff cannot establish that either former Warden Laird or DHO Garcia violated his constitutional rights.  Accordingly, because both of these individuals are entitled to qualified immunity, Plaintiff cannot establish an actionable claim against either Warden Laird or DHO Garcia.  Even if the Court were to find that there had indeed been a constitutional violation, both Warden Laird and DHO Garcia would still be entitled to qualified immunity under the second prong of that test:  to wit, it would not have been clear to a reasonable individual that the conduct of Warden Laird and DHO Garcia was unlawful.  As such, they are immune from suit in their individual capacity, and the *Bivens* claims against them must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of individual Defendants Warden Laird and DHO Garcia and grant Defendants any such other and further relief as the Court may deem proper and just.

Dated: Brooklyn, New York
      February 29, 2016                     Respectfully submitted,

                                      ROBERT L. CAPERS
                                      United States Attorney

                    By:     s/ James R. Cho
                                        James R. Cho
                                        Assistant United States Attorney
                                        (718) 254-6519
                                        james.cho@usdoj.gov

To:     Demetrius Hill (by overnight courier service)
        No. 68133-053
        USP Lewisburg
        U.S. Penitentiary
        P.O. Box 1000
        Lewisburg, PA  17837

        Nicholas Gregory Kaizer (by ECF)