```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DEMETRIUS HILL,

                        Plaintiff,
                                                MEMORANDUM & ORDER
            -against-                           06-CV-0126(JS)(ARL)

PAUL LAIRD, WARDEN OF MDC; MR. CLEMENS,
ASSOCIATE WARDEN; LT. FRANK MALDONADO;
CASE MANAGER MCFARLAND; DANNY GARCIA,
D.H.O.; and HENDERSON, C.O.,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:          Demetrius Hill, pro se
                        #68133-053
                        United States Penitentiary, Lewisburg
                        Inmate Mail/Parcels
                        P.O. Box 1000
                        Lewisburg, PA 17837

For Defendants
Laird, Clemens,
McFarland, Garcia,
and  Henderson:         James R. Cho, Esq.
                        Vincent Lipari, Esq.
                        United States Attorney's Office
                        Eastern District Of New York
                        271 Cadman Plaza East
                        Brooklyn, NY 11201

Lt. Maldonado:          Nicholas Gregory Kaizer, Esq.
                        Levitt & Kaizer
                        40 Fulton Street, 3rd Floor
                        New York, NY 10038
```

SEYBERT, District Judge:

Presently pending before the Court is defendant Lieutenant Frank Maldonado's ("Maldonado") motion for summary

1

judgment. (Def.'s Mot., Docket Entry 155.) For the following reasons, Maldonado's motion is DENIED.

Preliminarily, the Court notes that while Maldonado filed a Local Rule 56.1 Statement (see Docket Entry 155-1) Plaintiff Demetrius Hill ("Plaintiff") has not filed a corresponding Local Rule 56.1 Counterstatement. While the Court is permitted to deem Maldonado's Rule 56.1 Statement admitted and grant summary judgment to him based on undisputed facts, D'Nelson v. Costco Wholesale Corp., No. 03-CV-0219, 2006 WL 767866, at *3 (E.D.N.Y. Mar. 24, 2006), in light of Plaintiff's pro se status, the Court will exercise its discretion to "overlook" Plaintiff's failure to submit a Rule 56.1 Counterstatement. McLean v. Metro. Jewish Geriatric Ctr., No. 11-CV-3065, 2013 WL 5744467, at *1 (E.D.N.Y. Oct. 23, 2013). Thus, "the Court will deem admitted only those facts that are supported by the record and not controverted by other admissible evidence." Id. (citation omitted).

## BACKGROUND

The Court assumes familiarity with the facts of this matter, which are set forth more fully in its Order dated March 31, 2014. See Hill v. Laird, No. 06-CV-0126, 2014 WL 1315226 (E.D.N.Y. Mar. 31, 2014). On January 6, 2006, incarcerated pro se plaintiff Demetrius Hill ("Plaintiff") commenced this action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91

2

S. Ct. 1999, 29 L. Ed. 2d 619 (1971), against former and current prison officials at the Metropolitan Detention Center alleging, inter alia, First Amendment claims of retaliation for filing prison grievances. (See generally Compl., Docket Entry 1.) With respect to Maldonado, Plaintiff alleges:

> While Lt. Maldonado was [Special Housing Unit "S.H.U."] Lieutenant, plaintiff filed a number of complaints as well. Said Lieutenant took plaintiff into his office, opened a desk drawer and removed a "noose" that was thickly braided, he told the plaintiff that "if he did not stop filing complaints while he [w]as in S.H.U., he would do him like the guy on Range 1." When plaintiff asked what he meant, Lt. Maldonado stated, "I'll say I found this, you were trying to hurt yourself so I had to rush in and stop you, an emergency use of force is what we call it. Your arm might be broken in a few places for a long time, I like you Hill, but you making me look bad to these hillbillies from Kentucky."

(Compl. at 5.)

On March 8, 2016, Maldonado moved for summary judgment. (See, Def.'s Mot.) Maldonado argues that Plaintiff has not established that he suffered an adverse action. (Def.'s Br., Docket Entry 155-2, at 3.) Particularly, Maldonado argues that Plaintiff must establish that his speech was chilled because: (1) Maldonado allegedly made a threat of future harm, as opposed to retaliation for Plaintiff's past conduct, and (2) Plaintiff's only harm is the chilling of his speech. (Def.'s Br. at 4-5.) Maldonado alleges that Plaintiff cannot demonstrate that his speech was

3

chilled, as he continued to "bombard both the prison system and the courts with multiple grievances and lawsuits."[1]  (Def.'s Br. at 5-6.)

Plaintiff has not opposed Maldonado's motion.

DISCUSSION

I. Legal Standard

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed 2d 202 (1986).  In determining whether an award of summary judgment is appropriate, the Court considers the pleadings, deposition testimony, interrogatory responses, and admissions on file, together with other firsthand information that includes but is not limited to affidavits. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

---

[1] The parties dispute whether Plaintiff filed a grievance with respect to Maldonado's alleged threat.  While Maldonado alleges that the Bureau of Prison's records do not indicate that Plaintiff filed a grievance regarding his alleged threat, he also acknowledges that Plaintiff testified at his deposition that he filed a grievance regarding this incident and complained to the Warden.  (Def.'s Br. at 6.)

4

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id. However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

II. First Amendment Retaliation

To establish a claim for retaliation in contravention of the First Amendment, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012). Here, Maldonado does not dispute that Plaintiff engaged in

protected speech by filing grievances,[2] or that there is a causal connection between Plaintiff's grievances and Maldonado's alleged threat. (See generally Def.'s Br.) Maldonado only argues that Plaintiff has failed to establish that he suffered an adverse action. The Court disagrees.

The Second Circuit has utilized an objective standard in analyzing whether a prisoner suffered an adverse action in connection with a First Amendment retaliation claim. In Davis, the Court held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis, 320 F.3d at 353 (internal quotation marks and citation omitted).

In Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 2004), the Second Circuit addressed whether conduct is "adverse" where it does not ultimately deter the prisoner-plaintiff from exercising his First Amendment rights. The Pidlypchak plaintiff alleged, inter alia, that the defendants retaliated against him for filing grievances by filing false misbehavior reports that led to his placement in prison "keeplock." Id. at 380. The defendants

---

[2] "[T]he filing of prison grievances is a constitutionally protected activity[.]" Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).

6

argued that the plaintiff was required to satisfy both an objective and subjective test.³ Id. at 381.

The Court noted the inconsistency between First Amendment retaliation claims asserted by private citizens against public officials, where a subjective test is used "to gauge both the nature and the extent of the alleged injury," and First Amendment claims asserted by prisoners, where an objective test controls. Id. The Court then set forth three methods of analysis that might resolve this inconsistency. Id. at 381-82. First, the Court explained that prisoner cases, like cases involving public employees or contractors, are subject to different requirements than cases brought by private citizens. Id. at 382. The Court noted that public employees asserting retaliation claims are not generally required to demonstrate that their speech was chilled subsequent to the adverse action. Id. Second, the Court indicated that there may be no inconsistency between these types of cases; in claims brought by private citizens against public officials, "the only injury alleged by the plaintiff is, seemingly, the putative chilling itself." Id. (emphasis omitted). The Court noted that pursuant to its second approach, "standing is no issue

---

³ The Pidlypchak defendants argued that the objective test must be satisfied "to ensure that the claim is not frivolous" and the subjective test must be satisfied to "ensure that there is an injury sufficient to grant standing." Id. at 381 (citation omitted).

7

whenever the plaintiff has clearly alleged a concrete harm independent of First Amendment chilling." Id. at 383. Third, the Court explained that subjective chilling may generally be required except where the prisoner's protected conduct is the filing of a prior grievance or lawsuit, as "it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation." Id.

Ultimately, the Pidlypchak Court did not determine which theory was applicable, as the complaint stated a First Amendment retaliation claim under any of the previously noted approaches. Id. at 384. However, the Court noted that the plaintiff's claims were based on prior grievances and "the fact that a particular plaintiff such as Gill--who, we recognize, is no stranger either to the grievance system or to the federal courts--responded to retaliation with greater than 'ordinary firmness' does not deprive him of a cause of action." Id. In a subsequent decision, the Second Circuit characterized Pidlypchak as holding that "in proving [an] adverse action, a prisoner need not demonstrate an actual or subjective chill--that is, any dissuasion from further exercising his own rights." Gill v. Calescibetta, 157 F. App'x 395, 397 (2d Cir. 2005) (citing Pidlypchak, 389 F.3d at 384; emphasis in original).

Maldonado alleges that a subjective standard controls because: (1) Plaintiff does not allege punishment based on past

8

speech but instead alleges that Maldonado "threatened to punish him if he failed to settle previously-filed grievances or should he file <u>future</u> ones," and (2) Plaintiff's only injury is the chilling of his speech. (Def.'s Br. at 5 (emphasis in original).) However, Plaintiff's claim is for retaliation based on the filing of prior grievances. (<u>See</u> Compl. at 5 ("[Maldonado] told the plaintiff that 'if he did not stop filing complaints while he [w]as in S.H.U. he would do him like the guy on Range 1.") Indeed, Plaintiff's only alleged protected conduct is his prior filing of grievances. As previously noted, <u>Pidlypchak</u> held that it would be "unfair in the extreme" if a prisoner's claim of retaliation for the prior filing of a grievance is defeated because he filed a subsequent grievance or lawsuit with respect to the defendant's conduct. <u>Pidlypchak</u>, 389 F.3d at 383. The Court finds that it would be equally "unfair in the extreme" to hold that Plaintiff's claim must fail because he continued to file grievances regarding the conduct of other prison officials. Although Plaintiff, like the plaintiff in <u>Pidlypchak</u>, is not a stranger to the grievance or court system, the fact that he "responded to retaliation with greater than 'ordinary firmness' [should] not deprive him of a cause of action." <u>Pidlypchak</u>, 389 F.3d at 384. <u>See</u> <u>also</u> <u>Ford. v. Palmer</u>, 539 F. App'x 5, 6 (2d Cir. Sept. 24, 2013) ("As we have stated, the 'objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he

9

continued to file grievances and lawsuits.'") (quoting Pidlypchak, 389 F.3d at 381).

Additionally, the decision in Quezada v. Roy, No. 14-CV-4056, 2015 WL 5970355 (S.D.N.Y. Oct. 13, 2015) is instructive with respect to the application of an objective standard to the case at bar. In Quezada, the plaintiff-prisoner asserted, inter alia, that one of the defendants retaliated against him for filing grievances by threatening to kill him. Quezada, 2015 WL 5970355, at *23. Nevertheless, the Quezada plaintiff continued filing complaints and/or grievances against prison officials notwithstanding the alleged threat. Id. at *4-6. The defendants moved for summary judgment on the issue of qualified immunity and in determining that motion, the court also evaluated the merits of certain of the plaintiff's claims. Id. at *1. The court applied an objective standard to the plaintiff's First Amendment retaliation claims pursuant to Pidlypchak, noting that "[b]ecause it is an objective inquiry, sufficiently serious verbal threats can constitute 'adverse action.'" Id. (quoting Ford, 539 F. App'x at 6 (Holding that the prisoner plausibly alleged an adverse action based on the officer's threat to poison him.)). The Quezada Court ultimately declined to dismiss the plaintiff's retaliation claim based on the threat to kill, holding that "[a] threat to kill someone for filing a grievance is sufficiently serious that it

10

might well deter a person of ordinary firmness from exercising his First Amendment rights[.]" Id. at *23.[4]

Maldonado's reliance on Saleh v. City of N.Y., No. 06-CV-1007, 2007 WL 4437167 (S.D.N.Y. Dec. 17, 2007), to support the applicability of a subjective standard is misplaced. (See Def.'s Br. at 4-5.) In determining whether the Saleh plaintiff stated an adverse action with respect to his First Amendment retaliation claim, the Southern District summarized the Pidlypchak Court's first approach as distinguishing between retaliation claims based on punishment for past speech as opposed to those alleging deterrence from future speech. Saleh, 2007 WL 4437167, at *3. (See also Def.'s Br. at 5.) The Saleh Court noted that pursuant to Pidlypchak's first approach, where "the defendant tangibly punished the plaintiff for his speech, an objective standard is warranted . . . [w]hen the case focuses instead on whether the defendant's actions quelled the plaintiff's inclination to speak again in the future, a subjective standard provides the proper test." Id. at *3. The court also noted that under Pidlypchak's

---

[4] The Court acknowledges that in Quezada, the defendant continued harassing the plaintiff after he threatened to kill him, while in the case at bar, the sole allegation against Maldonado is his alleged threat. Quezada, 2015 WL 5970355, at *5, 23 ("threats to seriously harm prisoners can be sufficiently serious in the context of repeated instances of harassment or retaliation") (emphasis supplied; citing Ford, 539 F. App'x at 7). However, the Court finds that the reasoning of Quezada is applicable in light of the seriousness of Maldonado's threat.

11

second approach, "when the only injury alleged is the chilling of speech itself, a subjective test should govern the claims." Id.

However, the court ultimately concluded that an objective standard controlled and the plaintiff's claims were not defeated by his inability to establish that his speech was chilled. Id. at *5. The court held that while all three Pidlypchak approaches supported the application of an objective standard, the third approach provided "perhaps the strongest" basis for applying an objective standard to the plaintiff's First Amendment retaliation case. The court also noted that "[i]f a subjective test governed retaliation claims involving the right to petition the government for a redress of grievances, it would have the perverse effect of barring all such claims." Id. at *4.

Accordingly, the Court declines to take the quantum leap suggested by Maldonado and transform the Saleh Court's summary of Pidlypchak into a test wherein a subjective standard is applied to threats of future harm. Instead, the Court will apply an objective standard in analyzing Plaintiff's claims against Maldonado.

As previously noted, in certain cases, verbal threats can constitute an adverse action. Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010). However, not all verbal threats rise to the level of adverse actions and "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." Mateo, 682 F. Supp. 2d at 434

12

(collecting cases).  Maldonado does not argue that his alleged verbal threat is not sufficiently direct or specific to constitute an adverse action.  (See generally Def.'s Br.)  Indeed, the Court finds that Maldonado's alleged threat is highly specific.  As previously noted, the Complaint alleges that Maldonado stated that if Plaintiff did not stop filing grievances, he would "say I found this [noose], you were trying to hurt yourself so I had to rush in and stop you . . . [y]our arm might be broken in a few places for a long time."  (Compl. at 5.)  The Court finds that a reasonable juror could find that a similarly situated prisoner of ordinary firmness would be deterred from filing prison grievances based on Maldonado's threat.  See Davis, 320 F.3d at 353.  The Court is mindful of the seriousness of threats of bodily harm, "particularly in view of the numerous reports of corrections officer misconduct that have been made public recently."  Quezada, 2015 WL 5970355, at *23.  Additionally, there is a clear causal connection between Plaintiff's protected activity and Maldonado's comments, as the Complaint alleges that Maldonado expressly indicated that he was threatening Plaintiff about what would happen if he "'did not stop filing complaints.'"  (Compl. at 5.)  Accordingly, Maldonado's motion for summary judgment is DENIED.

## CONCLUSION

For the forgoing reasons, Maldonado's motion for summary judgment (Docket Entry 155) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June  29 , 2016
       Central Islip, New York